the donor being insolvent, are not favored. Further testimony should be taken on this point, and permission is given the trustee to proceed as he may be advised to collect the assets of the estate. The reference to the referee to hold the final meeting of creditors under Dist. Ct. Rule 8, and the allowance of a fee therefor, constitute him a special master for this purpose, and is supported by authority. Fellows v. Freudenthal, 4 Am. Bankr. R. 491, 102 Fed. 731.

Checks are sent up to be countersigned, allowing each of the partners a personal property exemption of $500,—J. C. Curtis, $470 cash, balance personal property; P. S. Steed, $484 cash, balance personal property. The constitution of North Carolina, as construed by the state courts, which the courts of bankruptcy follow, does not seem to contemplate this species of practice, which is too often attempted. Article 10, § 1. Money is personal property, and, if the debtor has the money on hand, he may elect to take his exemption in cash; but in allowing a personal property exemption out of the firm assets, even when both partners consent (In re Stevenson, 2 Am. Bankr. R. 230, 93 Fed. 789), it must appear the members of the firm have no individual personal property exemption exclusive of the firm assets. If they have such exemption, it cannot be allowed from the firm assets. The constitution does not contemplate two personal property exemptions. In the present unsatisfactory state of the cause, these checks cannot be countersigned, or the personal property exemption allowed out of the firm assets. Under further proceedings it may be shown the bankrupts have a personal property exemption exclusive of the firm assets. The facts should be further investigated, and for this purpose the whole case is remanded to the referee.

---

### GREMPLER v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. March 12, 1901.)

No. 2,910.

CUSTOMS DUTIES—CLASSIFICATION—COMPOSITION METAL.

Composition metal of which copper is the component material of chief value, in sheets which require to be reworked before the metal is available for use, is not dutiable under paragraph 177 of the tariff act of 1894, as a partly manufactured article composed wholly or in part of any metal, but is entitled to free entry under paragraph 452.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Appeal by the United States from a decision of the circuit court reversing the decision of the board of general appraisers as to the classification for duty of certain imported merchandise.

The following is the opinion of the circuit court (TOWNSEND, District Judge):

The merchandise in question consists of composition metal, of which copper is the component material of chief value, and which is imported in large sheets. It was assessed for duty as a "manufactured article, not specially provided for, composed wholly or in part of any metal, and whether partly or wholly manufactured, thirty-five per centum ad valorem," under the provi-

sions of paragraph 177 of the act of 1894, and was claimed to be free under paragraph 452 of said act, as a "composition metal of which copper is a component material of chief value, not specially provided for." It is contended that this merchandise is partly manufactured, because it has been thus made into sheets. This contention is met by proof that these sheets are not available for any purpose until after they have been beaten to one-sixth their present thickness, and then cut into pieces and put into books to be sold, apparently for use in gilding. The invoice consists of kupfermetall, buchmetall, and clippings. It appears that the kupfermetall is all copper, and therefore it is not included under the provisions for composition metal. As to the buchmetall and clippings, I think the question has been disposed of favorably to the contention of the importer by Judge Wheeler in Benedix v. U. S. (C. C.) 99 Fed. 258, where an article practically identical with this here in question was before him upon a similar contention. The decision of the board of general appraisers is affirmed as to the kupfermetall, and reversed as to the buchmetall and clippings.

D. Frank Lloyd, Asst. U. S. Atty.

Albert Comstock, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. Decision of circuit court affirmed on opinion below.

---

### COCA et al. v. MORRIS et al.

(Circuit Court of Appeals, Seventh Circuit. April 15, 1901.)

No. 705.

EXPORTERS—DELAY IN TRANSMISSION OF GOODS—LIABILITY—INCREASED CUSTOMS DUTIES.

Pending the passage of the Wilson tariff bill of 1894, defendant filled an order for lard at Chicago to be shipped to plaintiffs in Cuba, the goods to be delivered to the purchasers at the point of shipment, but delay, for which the defendants were in no way responsible, occurred in forwarding a part of it by vessel from New Orleans, and before it reached Havana plaintiffs had to pay duties imposed thereon by the Spanish government in retaliation for the passage of the Wilson bill, and which, but for the delay, would not have been collected. *Held*, that the risk of such a result was taken by plaintiffs, and they could not claim reimbursement from defendants therefor.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

This is an action by plaintiffs below, citizens of Cuba, against the defendants, citizens of Chicago, doing business at Chicago as manufacturers and dealers in lard under the firm name of Nelson Morris & Co., to recover the sum of $3,635.87 damages, being the amount of custom duties which the plaintiffs below allege that they had to pay over and above what, but for the alleged negligence of the defendants, they would have been required to pay, at Havana, upon 268 tierces of lard shipped by the defendants below to them in August, 1894. The ground of the action is the alleged negligence of Nelson Morris & Co. in not shipping the goods to reach Havana, Cuba, before the Spanish government had increased the import duties upon lard in retaliation of an act of congress known as the "Wilson Tariff Bill," which at about that time had become a law in the United States. A jury being duly waived by the parties, the action was tried before the court without a jury, and the facts in the case as they appear from the record are found and fully stated by the court in its findings in the case as follows: