### UNITED STATES v. GEORGE MEIER & CO.

(Circuit Court of Appeals, Second Circuit. January 6, 1905.)

#### No. 76.

**1. CUSTOMS DUTIES—CLASSIFICATION—FLITTERS—COMPOSITION METAL.**

The article commercially known as "flitters," produced from the thin sheets which constitute the composition metal of commerce, by a process of manufacture that makes it no longer available for the uses to which composition metal of trade is put, but adapts it for other ˙uses, is not free of duty as "composition metal," under Tariff ˙Act July 24, 1897, c. 11, § 2, Free List, par. 533, 30 Stat. 197 [U. S. Comp. St. 1901, p. 1682], but is dutiable as manufactures of ˙metal under paragraph 193, § 1, Schedule C, of said act (30 Stat. 167 [U. S. Comp. St. 1901, p. 1645]).

**2. SAME—"MANUFACTURE."**

*Held,* ˙that an article which has been advanced through one or more processes into a completed commercial article, known and recognized in trade by a specific and distinctive name other than the name of the material from which it is made, and is put into a completed shape, designed and adapted for a particular use to which the material in its original form is not adapted, is to be deemed a manufacture, although its component materials are unchanged.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decision of the Circuit Court, Southern District of New York (128 Fed. 472), reversing a decision of the Board of General Appraisers (G. A. 5150; T. D. 23,752), which had affirmed the collector of the port of New York in the assessment of certain customs duties.

Note Baer v. United States (C. C.) 130 Fed. 391.

D. Frank Lloyd, for the United States.

A. H. Washburn, for appellees.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

LACOMBE, Circuit Judge. The importations were under Tariff Act July 24, 1897, c. 11, 30 Stat. 151 [U. S. Comp. St. 1901, p. 1626], the relevant paragraphs of which act read as follows:

"Par. 193. Articles or wares not specially provided for in this act, composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum, or other metal, and whether partly or wholly manufactured, 45 per centum ad valorem." 30 Stat. 167, c. 11,˙§ 1, Schedule C [U. S. Comp. St. 1901, p. 1645].

"Free List, par. 533. Old copper, fit only for manufacture, clipping from new copper, and all composition metal of which copper is a component material of

chief value, not specially provided for in this act." 30 Stat. 197, c. 11; § 1 [U. S. Comp. St. 1901, p. 1682].

From the undisputed testimony it appears that ingots of composition metal are put through rollers, and further thinned down under a hammer, until they become thin sheets, the "composition metal" of trade; the importer himself testifying that in trade composition metal appears only in fine sheets or leaves. These thin sheets are cut into desired sizes, and from the shearings left over the merchandise in suit is produced. These shearings are first cut into small pieces with the scissors or a machine, and are then placed in a steel box, in which a stamp goes up and down, still further reducing the size of the pieces, although not to the condition of powder. By such process, although scientifically it still remains a composition of copper (chief value) with some other metal or metals, the merchandise is no longer available for the uses to which the composition metal of trade in thin sheets or leaves was put; but it has become adapted to other uses, being employed to sprinkle over the face of surfaces where it is desired to produce a glittering metallic effect. Moreover, it has its own distinctive trade name, being universally known as "flitters."

In Erhardt v. Hahn, 55 Fed. 273, 5 C. C. A. 99, this court referred to the authorities holding that, under the tariff acts, where an article has been advanced through one or more processes into a completed commercial article, known and recognized in trade by a specific and distinctive name other than the name of the material, and is put into a completed shape designed and adapted for a particular use, it is deemed to be a manufacture. The application of this principle is determinative of the case at bar, for, although its component materials are unchanged, processes of manufacture have produced a completed commercial article, known and recognized in trade, not as composition metal, but as flitters, and which is designed and adapted for a particular use, to which the composition metal of trade could not be put until it had first been subjected to such additional processes of manufacture.

The cases cited by the counsel for the importer are not persuasive to a different conclusion. In Dejonge v. Magone, 159 U. S. 562, 16 Sup. Ct. 119, 40 L. Ed. 260, the importations were of two kinds of paper—one coated, colored, and embossed to imitate leather; the other coated with flock, to imitate velvet. Both kinds were known to the trade when the tariff act was passed as "fancy papers," and were held to be included in the paragraph providing for "paper hangings and paper for screens, * * * paper antiquarian, demy, drawing, * * * note and all other paper." In Grempler v. United States, 107 Fed. 687, 46 C. C. A. 557, this court sustained the Circuit Court in holding that large sheets of composition metal, not available for any purpose until they had been beaten to one-sixth of their present thickness and then cut into pieces, had not been transformed into a different article of manufacture from the original ingot of composition metal. In the same case there seems to have been some question as to "clippings," which were also held

to be composition metal. Apparently these are the shearings referred to supra, but before they have been cut up and beaten into flitters, thus completing the process of manufacture. In United States v. Binney, 82 Fed. 992, 27 C. C. A. 347, this court again affirmed the Circuit Court as to certain steel produced by crushing steel ingots into kernels or grains of different degrees of fineness, and used by stone sawyers. It was known to trade as "Diamond Steel," and was held to be included in a paragraph providing for a long enumeration of steel articles, and concluding with the phrase "steel in all forms and shapes." In Boker v. United States, 97 Fed. 205, 38 C. C. A. 114, the importation comprised certain nickel alloy in the form of rods, sheets, and wire. This court affirmed the Circuit Court, holding the merchandise to be covered by the paragraph providing for "nickel or alloy of any kind in which nickel is the material of chief value," saying:

"It seems clear that the rods and plates are not advanced from the condition of nickel alloy. They are incapable of practical use without being subjected to further manipulation and manufacture. * * * Congress, by the provision for nickel alloy, itself a manufacture, must be presumed to have intended to provide for such alloy in its ordinary commercial forms as known at the passage of the act. The wire, however, is a manufacture of metal, a complete merchantable article, * * * to be used in the construction of rheostats, and dealt in commercially in various sizes adapted to the purposes for which it is wanted."

United States v. Leonard, 108 Fed. 42, 47 C. C. A. 181, presents no question of an advance by manufacturing processes beyond first conditions into a new and different article having a distinctive trade-name. The opinion of the Circuit Court in Marsching v. U. S., 113 Fed. 1006, contains no indication that the "lame" cut up into minute scales was known commercially as something different from "lame." That decision therefore has no application here.

The decision of the Circuit Court is reversed, and that of the Board of Appraisers is affirmed.