UNITED STATES *v.* SWAIN & BOGGS Co. (No. 2249).[1]

KNOCK-DOWN CRATES—PRESUMPTION FAVORS COLLECTOR.

Pieces of a low grade of lumber, imported in bundles, each bundle containing the right number of pieces of the right sizes to make a crate, having been classified by the collector as manufactures of wood under paragraph 176, tariff act of 1913, and there being nothing in the evidence to rebut the presumed correctness of the classification, the decision of the board sustaining a protest claiming free entry under paragraph 647 as lumber is reversed.

United States Court of Customs Appeals, November 17, 1923.

APPEAL from Board of United States General Appraisers, Abstract 45617.

[Reversed.]

*William W. Hoppin,* Assistant Attorney General (*Bernard Hahn* and *Charles D. Lawrence,* special attorneys, of counsel), for the United States.
*Waterhouse & Lockett* for appellees.

[Oral argument October 22, 1923, by Mr. Lawrence.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, and BLAND, Associate Judges.

BARBER, Judge, delivered the opinion of the court:

Paragraph 176 of the tariff act of 1913, among other things, pro- vides for "manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for," at a duty rate of 15 per cent ad valorem.

Paragraph 647 of the same act gives free entry to "sawed boards, planks, deals, and other lumber, not further manufactured than sawed, planed, and tongued and grooved."

The imported merchandise here is pieces of wood of the following dimensions: 1 by 2 inches, 56 inches long; 1 by 2 inches, 13 inches long; 1 by 3 inches, 60 inches long; ½ inch by 3 inches, 58 inches long.

---

[1] T. D. 39891.

As imported, these pieces are assembled and tied in packages called bundles; each bundle contains 16 or 20 pieces, as the case may be; each piece is cut to size and ready for use in making crates; and in each bundle there are apparently just the number of pieces of the requisite size to make one crate.

The collector classified and assessed the importation under the above quoted part of paragraph 176. Importer duly protested, claiming the merchandise was entitled to free entry under the quoted part of paragraph 647 as lumber not further manufactured than sawed.

The Board of General Appraisers sustained the protest and the Government appeals.

In view of the collector's action, this merchandise is presumptively a manufacture of wood under paragraph 176, and to sustain its protest importer was charged with the burden of producing evidence sufficient to overcome this presumption.

We have not the aid of a brief or argument on behalf of importer.

Before the board importer introduced two witnesses; the Government none. One witness, the president of the importing company, testified that he had been in the business of buying, importing, and selling lumber for more than 10 years and was familiar with the merchandise in question. He produced a sample bundle illustrative of the importation, which is before us. He had imported similar merchandise for some 10 years and it had always been passed free of duty. He testified that he did not know whether the number of boards imported in a bundle constituted a crate or not, but he did know that they were designed to be manufactured into crates; that it was his understanding in ordering the merchandise that it would be in bundles, each containing a sufficient number of pieces to make a crate and in such approximate dimensions that there would be no more waste than was absolutely necessary, but he called it crating stock, and not crates. He sold it in the condition in which it was imported.

The other witness testified that he represented a company engaged in the manufacture of brass beds; that he had been familiar with importations like those here for six or seven years; that his firm bought goods like the illustrative sample, of the same dealer to whom importer's first witness said he sold them; that the illustrative exhibit came from his factory; that the only use made by his concern and the only use to which these bundles were put, so far as he knew, was in making crates for brass beds; that the pieces were cut to size and used without any cutting in crating the beds.

The merchandise is apparently a low grade of lumber. A few of the pieces in a bundle have been planed on two sides, some have been planed on only one side, and some do not appear to have been planed at all.

We do not think the above testimony, which is in substance all that there is upon the subject, is sufficient to overcome the presumed correctness of the collector's classification and assessment. The most favorable construction of the evidence for the importer is that the merchandise is sawed, shipped, and imported in bundles, each bundle containing the necessary number of pieces to make a crate for a bed; that these pieces are cut to the required size for such crates and that no further cutting is necessary when the beds are crated therein; that the contents of each bundle were apparently assembled and designed for the purpose of making one crate. There is no testimony showing that they are either designed, used, or suitable for any other purpose.

These pieces have been further manufactured than sawed, because they have been cut to certain sizes to enable them to be used for a particular purpose and assembled in packages indicating that to that purpose they have been definitely appropriated.

Possibly we could take judicial cognizance of the fact that these pieces might be devoted to some general lumber purposes for which boards of the same quality would be suitable, but we could hardly say that it would be commercially practicable or profitable so to use them or to use them for any purpose other than as crates for beds, in the absence of any proof upon that issue. If in their condition as imported the practical use of these pieces was not limited to the manufacture of crates, or if they were fairly adaptable to other general uses, it was for the importer to establish such facts.

We think on the record importer has failed to establish the contention raised by its protest and that these bundles of wood are dutiable as assessed.—Tide Water Oil Co. *v.* United States (171 U. S. 210); United States *v.* Dudley (174 U. S. 670; T. D. 27741, G. A. 6485); United States *v.* Meier & Co. (136 Fed. 764); Fenton *v.* United States (1 Ct. Cust. Appls. 529; T. D. 31546); Wanner *v.* United States (2 Ct. Cust. Appls. 68; T. D. 31628).

The judgment of the Board of General Appraisers is *reversed*.