M. MARTINEZ & CO. *v.* UNITED STATES (No. 3990) [1] [2]

United States Court of Customs and Patent Appeals, November 30, 1936

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for appellant.

*Joseph R. Jackson,* Assistant Attorney General (*William Whynman,* special attorney, of counsel), for the United States.

[1] T. D. 48703.
[2] See decision on rehearing, T. D. 48856, p. 292.

[Oral argument October 9, 1936, by Mr. Lawrence and Mr. Jackson]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD. GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, overruling importers' protest against the classification and duty assessment by the Collector of Customs at the port of San Diego, Calif., of certain merchandise invoiced and entered as "hay baling wire", imported from Germany.

It was found by the trial court, in substance, that the merchandise consists of bale ties composed of wire cut to lengths varying from 8 feet 6 inches to 8 feet 3 inches, one end being turned back and twisted so as to form a loop and that the ties are used for baling hay.

The collector assessed duty at the rate of 45 per centum ad valorem, classifying the merchandise under the provision of paragraph 397 of the Tariff Act of 1930, reading:

Articles or wares not specially provided for, if composed wholly or in chief value of * * * iron, steel, * * * , or other metal * * *.

The claim of appellants is that the merchandise is properly classifiable and assessable with duty under the provision of paragraph 317 of the Tariff Act of 1930, reading:

* * * all wire commonly used for baling hay or other commodities, one-half of 1 cent per pound.

Much testimony was taken in the case and there was also included in the record, by agreement of counsel, the testimony taken in a former case between the same parties (*M. Martinez & Co.* v. *United States*, Abstract 28813, 66 Treas. Dec. 946) involving similar merchandise, which hereafter we shall refer to as ties. Also there were filed as evidence several exhibits, including a sample of ties (Illustrative Exhibit A) and a roll or coil of wire (Illustrative Exhibit F) which is shown to be wire similar to that from which the ties are made.

It is proper to say that in the instant case the trial court overruled its former decision in the *M. Martinez & Co.* case, *supra*, where, according to its decision in this case, "no effort was * * * made by the Government to show that the merchandise consisted in fact of bale ties as distinguished from baling wire." Government counsel state that no appeal was taken from the former decision because the record was deemed insufficient, from the Government's standpoint, to justify it. So, in the present case a new and much more elaborate record was presented.

A detailed review of the evidence is not deemed to be necessary here, because, upon what we conceive to be the really pertinent facts, there are no material discrepancies in the testimony, and a statement of our conclusion as to what that testimony shows is sufficient. No

question of commercial designation as distinguished from the common meaning is involved, and the question presented is largely one of law.

We are quite convinced from the evidence that the ties in question, illustrated by Exhibit A, are made from wire similar to that contained in the rolls or coils of wire, illustrated by Exhibit F; that the wire in the coils has many other uses; that the coils, although often listed in catalogues and the like as "baling wire", are not now, and have not been for many years, purchased to any great extent in coil form by those having hay or other commodities to bale and by such purchasers cut to length and otherwise prepared for use in such baling; that the ties are designed solely for use in baling hay or other commodities; that they are commonly, probably exclusively, used for such purpose, and that this has been true for a period of twenty-five or more years. Also it is shown that those forms are almost the only form in which wire is used in baling hay and this, too, has been true for a period of twenty-five or more years. Further, the evidence shows that the ties are generally spoken of and commonly known and referred to in the trade both by sellers and purchasers as "baling ties", or "loop bale ties", not as "baling wire." They are shown by certain exhibits on file to be so billed by wholesale dealers to their purchasers and, by other exhibits, the coils of wire, such as Illustrative Exhibit F, are shown to be billed frequently as "annealed baling wire."

Under these facts the issue presented is: Are the articles, cut to standard lengths and looped at their ends, manufactured articles classifiable under paragraph 397, *supra*, or are they within the purview of "all wire commonly used for baling   *   *   *", and so classifiable under paragraph 317, *supra*?

The decision of the trial court seems to rest upon three grounds, viz.:

First, legislative ratification of administrative practice as showing legislative intent; second, certain authorities cited, and third, legislative approval of judicial interpretation.

The holding as to legislative ratification of administrative practice seems to be predicated solely upon the fact that a person representing certain interests appeared before the Senate Committee on Finance, while the bill which eventuated in the Tariff Act of 1930 was under consideration by that committee, and stated to the committee, in substance, that "under ruling of the appraisers" bale ties were being classified, under the Tariff Act of 1922, as "articles or wares not specially provided for if composed wholly or in chief value of iron or steel, 40 per cent ad valorem"; that it was evidently the intention of the previous Congress to allow baling wire and bale ties which are made of wire, which are used principally by the farmers, to enjoy a reasonable duty of one-half of 1 cent per pound instead of 40 per centum ad valorem, and suggested, or requested, that paragraph 317

of the Tariff Act of 1930 be so worded as to include "all wire bale ties." Congress failed to respond to the suggestion with any specific language and this negative act seems to be taken by the trial court as a ratification of administrative practice, and so an evidence of legislative intent. At least, its decision states:

From the foregoing it is indisputable that the Congress knew of merchandise designated as bale ties which was used for baling hay and other commodities. But it did not see fit to include the same in paragraph 317, as requested at the hearings before the legislative committees.

It may be added that before this court the brief on behalf of the Government points to and quotes from a brief filed by the same person before the committee of Congress which was the same in purport as his oral statement.

It is possible that cases may arise in which it may be proper for the courts to look to the hearings before committees of Congress but, in our opinion, administrative practice may not be proven by taking statements made before the committees by unofficial persons as to rulings of appraisers. It is peculiar that the Government in whose archives the official records rest, and whose officials are within easy call, should rely upon such method for the establishment of administrative practice, if that be deemed of importance in a case. Furthermore, we do not regard the mere negative action of Congress, upon the showing here made as to what occurred before the Finance Committee, as necessarily, or even very persuasively, indicating the legislative intent ascribed to it by the trial court. *Gulf Gypsum Co.* v. *United States, United States Gypsum Co. Appearing as Party in Interest*, 20 C. C. P. A. (Customs) 101, T. D. 45725; *United States* v. *Paramount Publix Corp.*, 22 C. C. P. A. (Customs) 452, T. D. 47453. In the latter case referring to certain statements made before the Senate Committee on Finance which was engaged in the preparation of a tariff measure, we said:

While such subject matter may be related to the enactment of the provision, we feel certain it should not be resorted to for the purpose of showing the intent of the legislature. We think it would be an unsafe practice for courts to permit such a consideration to be controlling since the enactment of the provision in the language before us might have been with an intent wholly different from that indicated by the witnesses.

We have deemed it proper to state the foregoing because, although we agree with the conclusion reached by the trial court in this case, we do so on other grounds, and it is not desirable that an unsound holding should become a precedent to be relied upon in future cases.

The authorities cited by the trial court are *United States* v. *Meier & Co.*, 136 Fed. 764, T. D. 25973; *United States* v. *Bache & Co.*, 7 Ct. Cust. Appls. 445, T. D. 37011; and *Gerrard Wire Tying Machines Co.* v. *United States*, T. D. 39341, G. A. 8583, 42 Treas. Dec. 256.

In the brief before us the Government has cited as additional authorities *Ishimitsu* v. *United States*, 11 Ct. Cust. Appls. 186, T. D. 38963; *Fujii Shoten* v. *United States*, 17 C. C. P. A. (Customs) 79, T. D. 43362, and *United States* v. *Sutherland International Despatch, and E. P. Stephenson, Agents for Kearfott Engineering Co.*, 21 C. C. P. A. (Customs) 264, T. D. 46790.

The decisions in the first two cases cited by the trial court are quoted from in the third case so cited and will be considered in connection with our discussion of the latter.

The *Ishimitsu* and *Fujii Shoten* cases, *supra*, are cited by the Government to show what this court has said relative to what constitutes a manufacture. The quotation from the first case, in the brief on behalf of the Government, is:

\* \* \* to constitute a manufacture of a thing, or a thing manufactured, it must appear that something has been produced so changed or advanced in condition from what it was before being subjected to the processing or treatment that whether of only one material or of more than one, it has attained a distinctive name, character or use, different from that originally possessed by the material or materials before being subjected to the manufacturing process.

In the *Sutherland* case, *supra*, we held certain articles described as "patent silent window channels" to be classifiable as manufactures of metal under paragraph 397, *surpa*, rather than as "brass channels" under paragraph 381 of the Tariff Act of 1930, which provided for brass channels *eo nomine*.

In that case we cited two other cases, the first being that of *Hirsch & Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 82, T. D. 33365, in which steel strips that had been plated with nickel were held classifiable under paragraph 199 of the 1909 tariff act which paragraph was substantially similar to paragraph 397, *supra*, it being found that the nickel plating had advanced the strips, rendering them "something more than steel strips." The other case cited was that of *United States* v. *Strauss & Buegeleisen*, 20 C. C. P. A. (Customs) 378, T. D. 46184, in which small disks of glass (made from unpolished crown glass in the form of cylinder glass), dedicated to the single use of making goggles, were held classifiable as manufactures of glass rather than as cylinder glass, it being said that the disks of glass as imported "have been dedicated, in so far as this record goes, to a single use and have no other use than in the making of goggles." It is clear from our decision there that we regarded the case as being controlled largely by our decision in *Konishi Kotakudo Co. (Inc.)* v. *United States*, 17 C. C. P. A. (Customs) 355, T. D. 43798, which also involved glass "used chiefly as parts of automobile goggles."

In the case at bar nothing has been added to the original wire as it was in the coil. The original wire has merely been cut to lengths and

the ends of the lengths bent back and twisted to form a loop. The original wire, according to the Government's theory, was "baling wire" and the ties made from it are "baling ties." Hence, to that extent, at least, the uses are the same and there is no new character or use shown for the ties, "different from that originally possessed by [such of] the material" (the coil wire) as was used for baling before it was cut and looped. The difference is that the wire, as it is in the coils, has many uses other than that of being made into ties. This apparently was true also of the glass from which the disks involved in the *Strauss & Buegeleisen* case, *supra,* were made.

The third ground upon which the decision of the trial court rests is that of legislative adoption of judicial decision, the particular decision referred to being that of the United States Board of General Appraisers (now the United States Customs Court) in the *Gerrard Wire Tying Machines Co.* case, *supra,* which arose under the 1913 tariff act.

The phrase "wire commonly used for baling hay or other commodities" seems to have originated in the 1913 tariff act. Paragraph 645 (a free list paragraph) of that act read:

645. All barbed wire, galvanized wire not larger than twenty one-hundredths of one inch in diameter and not smaller than eight one-hundredths of one inch in diameter of the kind commonly used for fencing purposes, galvanized wire fencing composed of wires not larger than twenty one-hundredths of one inch in diameter nor smaller than eight one-hundredths of one inch in diameter, and wire commonly used for baling hay or other commodities.

It will be observed that the foregoing (save as to the duty) is the prototype of paragraph 317, *supra,* except that the latter omits "barbed wire", inserts "not specially provided for", and repeats the word "all" immediately preceding "wire commonly used for baling hay or other commodities." Paragraph 317 of the Tariff Act of 1922 is an exact prototype of paragraph 317 of the Tariff Act of 1930.

The 1913 tariff act contained another wire paragraph (paragraph 114) which provided for a duty of 15 per centum ad valorem on various kinds of wire, and upon,

* * * articles manufactured wholly or in chief value of any wire or wires provided for in this section; * * *.

The Collector of Customs assessed a shipment of bale ties, apparently similar (except as to length) to those here involved, imported while the 1913 tariff act was in effect, at 15 per centum ad valorem, as manufactures of wire under the provision of that part of paragraph 114 above quoted. Protest was made, the claim being that they were duty free as "wire commonly used for baling hay or other commodities" provided for in paragraph 645 of that act, *supra.* The protest was overruled by the Second Division of the United States Board of General Appraisers (now the United States Customs Court) in the

*Gerrard Wire Tying Machines Co.* case, *supra*, it being held that the ties were manufactures of wire.

In its decision the trial tribunal quoted from the *Meier & Co.* case, *supra*, an expression, that—

where an article has been advanced through one or more processes into a completed commercial article, known and recognized in trade by a specific and distinctive name other than the name of the material, and is put into a completed shape designed and adapted for a particular use, it is deemed to be a manufacture.

Also, the decision quoted from the *Bache & Co.* case, *supra*, where glass signs made from window glass were distinguished from the material out of which they were made.

The decision was rendered November 27, 1922, some two months after the effective date of the Tariff Act of 1922, in which the prototype paragraph had been modified by inserting "not specially provided for" in connection with galvanized wire commonly used for fencing purposes, and by inserting the word "all" before the phrase "wire commonly used for baling hay or other commodities." There was no appeal from that decision and presumably it has been followed ever since its rendition in the classification of merchandise such as that here involved.

Appellants here urge that by the insertion of the word "all" immediately before "wire commonly used for baling hay or other commodities" in the Tariff Act of 1930 (it not having so appeared in the 1913 act although it did so appear in the 1922 act) Congress evidenced an intent to bring about a change in that classification of baling ties which had been upheld in the decision in the *Gerrard Wire Tying Machines Co.* case, *supra*.

We are unable to agree with this contention. In the first place, the word "all" had been so inserted in the 1922 act passed prior to that decision; so, its original insertion could not have been made because of such decision. In the second place, simply inserting that word is not sufficient, in our opinion, to indicate that Congress intended that an article which had actually been manufactured should be regarded, for tariff purposes, as being the material from which it was manufactured. As was pointed out in the decision in the *Gerrard Wire Tying Machines Co.* case, *supra*, where Congress desired to make special provision for iron and steel bands or hoops made from hoop or band iron or steel, it specifically provided for hoop or band iron or steel "cut to lengths, or wholly or partly manufactured into hoops or ties   *   *   *   with or without buckles." This phraseology appeared in the 1913 and 1922 tariff acts and is continued in paragraph 314 of the Tariff Act of 1930. It would seem that had Congress desired baling ties, commonly used for baling hay or other commodities, to take the same rate of duty provided for all wire so commonly used, it would have specified wire

"cut to lengths," etc., as was done in the case of metal hoops and bands.

It is true, of course, that a change in language in a tariff paragraph generally imports a change in legislative intent, but the insertion of the word "all" in the acts of 1922 and 1930 did not, in our opinion, indicate an intent to bring about the result for which appellants here contend. It is noted that the fencing wire and wire fencing provided for in paragraph 317, *supra*, is limited to "All * * * *galvanized* wire fencing * * *." [Italics ours.] It would seem a reasonable deduction that by repeating "all" in connection with baling wire and by not inserting "galvanized" therewith, Congress meant to make it clear that the paragraph includes all wire commonly used for baling purposes, whether galvanized or not, and this, it seems to us, may reasonably be assumed to have been the legislative intent which occasioned the change in language.

Appellants have cited here the case of *United States v. American Express Co.*, 5 Ct. Cust. Appls. 125, T. D. 34170, where pieces of chamois skin cut to particular sizes and having their edge scalloped were held not to have become manufactures of leather within the meaning of paragraph 452 of the 1909 tariff act. We are of opinion that the issue in the case at bar is not analogous to the issue there. We are unable to escape the conclusion that the great weight of authority supports the finding of the trial court that the baling ties at issue have become manufactured articles and, in a tariff sense, more than *wire* commonly used for baling hay or other commodities.

In view of the weight of authority, and in view of the judicial interpretation contained in the *Gerrard Wire Tying Machines Co.* case, *supra*, given prior to the passage of the Tariff Act of 1930, we must hold that the trial court reached the correct conclusion, and its judgment accordingly is *affirmed*.

---

M. MARTINEZ & CO. *v.* UNITED STATES (NO. 3990) [1] [2]

### ON PETITION FOR REHEARING

[Denied February 23, 1937.]

PER CURIAM: Appellants have presented a petition for rehearing in which, among other things, it is suggested that in our decision rendered November 30, 1936, 24 C. C. P. A. (Customs) 285, T. D. 48703, we fell into error respecting the question of legislative adoption of administrative practice and judicial interpretation.

In our decision it was recited that the United States Board of General Appraisers (now the United States Customs Court) on

[1] 70 Treas. Dec. 915.
[2] T. D. 48856.

November 27, 1922, decided the case of *Gerrard Wire Tying Machines Co.* v. *United States*, T. D. 39341, G. A. 8583, 42 Treas. Dec. 256, holding bale ties similar (except as to length) to those involved in the instant case to be "manufactures of wire", and said:

\* \* \* There was no appeal from that decision and presumably it has been followed ever since its rendition in the classification of merchandise such as that here involved.

In the petition for rehearing appellants urge, in effect, that the foregoing is in contravention of our declaration in the case of *United States* v. *Bassichis Co. et al.*, 16 Ct. Cust. Appls. 410, T. D. 43133, reading:

\* \* \* It might be contended that long-continued administrative practice might be presumed from the fact that the trial Customs Court having directed the classification, the administrative officers are presumed to follow its mandate. But this is not necessarily true, and the indulgence of such a presumption might lead to very serious error. In this case there is no evidence or other record proof of long-continued administrative practice except as above indicated, and this is not sufficient to justify the application of the doctrine to the facts at hand.

The petition for rehearing says:

As there is no reason for supposing that the decision in the present case was intended to overrule the *Bassichis* case, it would seem that the doctrine of adoption of administrative practice should not have been applied herein, as the two cases are analogous in the respect mentioned.

It is proper to say that we did not have the *Bassichis* case in mind while preparing the opinion in the instant case, and appellants are correct in assuming that it was not our purpose to overrule the pronouncement there made as quoted, *supra*. To the extent that our language in the decision of the instant case may be in conflict with the rule as stated in the *Bassichis* case, therefore, that language may be regarded as withdrawn.

This action, however, does not affect our conclusion in the case, and, since all other pertinent points suggested in the petition for rehearing were fully considered by us originally, no good purpose could be served by a rehearing and the petition therefor is *denied*.