(C. D. 417)

BRYANT & HEFFERNAN, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided January 15, 1941)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Joseph F. Donohue*, special attorney), for the defendant.

Before Cline, Evans, and Keefe, Judges·

Keefe, Judge: In this suit the plaintiff seeks to recover certain customs duties alleged to have been illegally exacted by the collector at New York upon merchandise invoiced as treated coal. Duty was assessed thereon at 30 per centum ad valorem under paragraph 216 of the Tariff Act of 1930, as amended by the trade agreement entered into between the United States and France (see T. D. 48316). The plaintiff claims that the product is entitled to free entry as coal under the provisions of paragraph 1650.

Paragraph 1650 of the free list provides:

Par. 1650. Coal, anthracite, semianthracite, bituminous, semibituminous, culm, slack, and shale; coke; compositions used for fuel in which coal or coal dust is the component material of chief value, whether in briquets or other form: * * *.

Paragraph 216, as amended by the trade agreement between the United States and France, reads in part as follows:

Par. 216. Articles or wares composed wholly or in part of carbon or graphite, wholly or partly manufactured, not specially provided for____30% ad val.

At the trial it was established that bituminous coal is crushed and screened to reduce it in size, then placed into a special cylinder and treated with sulphur trioxide gas; that upon removal it is washed with water or with water and soda ash in order to remove any sulphuric acid gases adhering to the coal; and that it is then ready for shipment. The evidence further discloses that the presence of the sulphur trioxide gas causes the chemical elements in the coal to undergo a change in the ratio of combination; that such change in ratio does not cause the coal to become less useful as a fuel, and treated coal has been so used, although the cost thereof is greatly increased by reason of the process; that the change in the ratio of the elements produces a characteristic not theretofore possessed by natural coal, to wit, its usefulness as a water softener, accomplished by the removal of calcium and magnesium ions in water and replacing them with sodium ions taken from the treated coal; that the sulphur trioxide treatment merely adds to the sulphur and oxygen content thereof; that before treatment coal is a mixture of carbon, hydrogen, oxygen, nitrogen, sulphur, calcium, magnesium, iron, aluminum, and sodium; that after treatment the coal contains the same elements, although the sulphur and oxygen content is increased; and that some coals naturally contain more sulphur than is found in treated coal.

The plaintiff contends that the term "coal" as found in paragraph 1650 is without qualification or limitation and therefore embraces every kind and class of merchandise properly referable thereto, either directly or as a species the genus of which is included within the tariff nomenclature, citing *Schade* v. *United States*, 5 Ct. Cust. Appls. 465,

T. D. 35002, and relying upon the cases of *Tower* v. *United States*, C. D. 204, and *Allen Forwarding Co.* v. *United States*, Abstract 27728.

The Government, upon the other hand, contends that as the coal has been ground and screened its physical properties are changed, and the gas treatment transforms its chemical properties so that the resulting product consists of a relatively uniform granular mass with the basic chemical structure altered from that of coal and having a new use. As authority for its contention, the Government cites *United States* v. *Meier*, 136 Fed. 764; *Holt* v. *United States*, Abstract 42312; *Vandegrift* v. *United States*, T. D. 38521; *Stone* v. *United States*, 7 Ct. Cust. Appls. 173, T. D. 36492; *Allen Forwarding Co.* v. *United States*, Abstract 27728; and *Salomon* v. *United States*, 26 C. C. P. A. 302, C. A. D. 32.

In the *Meier* case, *supra*, shearings from thin sheets of composition metal, which are cut into small pieces and then further reduced in size by machinery so that the merchandise is no longer available for the uses to which the composition metal was adaptable, but became useful for other purposes, and through such process acquired a distinctive trade name, the product being universally known as "flitters," was held to be a manufacture of metal.

In the *Holt* case, *supra*, two aniline dyes of foreign manufacture were mixed together in the United States to form a dye having different attributes. Said mixture of dyes was exported to Canada and returned in the condition as exported. A dye of such character was held to be a product of the United States and entitled to free entry as American goods returned.

In the *Vandegrift* case, *supra*, various chemicals of American manufacture were mixed together in Canada to form red signal flares. The merchandise was subsequently imported into the United States as American goods returned. The court held that, as the chemicals had been compounded into one united and inseparable body, the article imported was a product of Canada and dutiable under the appropriate paragraph of the tariff act.

In the *Stone* case, *supra*, certain currants which had been ground into a pulp for use in making wine were held to have completely lost their identity as currants and became a material prepared or made from currants, as the more diversified uses as currants had been destroyed.

In the *Salomon* case, *supra*, the question was whether a fuller's earth that had been activated was more specifically provided for as fuller's earth, manufactured, than under the *eo nomine* provision for clays or earths artificially activated with acid or other material. The court held that in providing specifically for artificially activated clays

or earths Congress meant to include therein all of such earths including fuller's earth within such specific designation.

In the case of *Allen Forwarding Co., supra,* cited by the plaintiff as well as by the Government, the merchandise in question consisted of certain briquets composed of lignite, a form of coal. The product was assessed for duty as an earthy or mineral substance and was claimed free of duty under that portion of paragraph 1650 of the Tariff Act of 1930, reading: "compositions used for fuel in which coal or coal dust is the component material of chief value, whether in briquets or other form." The Government contended that the coal or coal dust referred to in the provision had reference to the particular forms of coal especially named in the first portion of the paragraph, and, as lignite was not mentioned therein, briquets made therefrom were not entitled to free entry under said paragraph.

The court held that the varieties of coal provided for in the first part of paragraph 1650 were merely descriptive of coal commonly used for fuel in the United States and limits the free importation of coal used in its natural state as fuel to said *eo nomine* description, while the latter portion of said provision was much broader in scope and would include lignite, a subbituminous coal. The question there before the court was whether a variety of coal not *eo nomine* provided for in said paragraph would be excluded for that reason from the broader provisions for a composition in chief value of coal used for fuel purposes. Inasmuch as the briquets there under consideration were used for fuel the question of its use chiefly for other purposes did not arise. Likewise, we are of the opinion that the other cases, heretofore cited, by the Government, are not in point in the controversy herein, because the changes effected not only changed their characteristics but also the usefulness originally possessed by the articles. In the *Salomon* case, *supra,* the question concerned the relative specificity between two *eo nomine* provisions. The special treatment applicable to the merchandise covered by the latter provision was held to include all merchandise so treated, even though provided for *eo nomine.*

In the *Tower* case, cited by the plaintiff, coke, assessed for duty as an article composed of carbon, was treated to a great amount of heat resulting in the elimination of all moisture and volatile matter. The resultant product was used in the manufacture of dry batteries and was known as calcined petroleum coke. The court held that, after processing, the merchandise was still coke, although advanced by the elimination of moisture and volatile matter, and was classifiable under the *eo nomine* provision therefor.

The similarity in the *Tower* case is that the treatment of the coke fitted the product for a new use other than a fuel. The treatment

thereof was in the nature of a purification by eliminating certain volatile matter, which, nevertheless, might also have been useful for fuel purposes. In the case before us, we have two of the natural elements in coal increased in proportion to that contained in the composition of natural coal, resulting in an additional use for the product, which distinguishes treated coal from the coke in that case.

In the case of *Balfour, Guthrie & Co., Ltd.* v. *United States*, C. D. 397, certain palm oil, which had been treated after extraction from the fruit of the palm resulting in the removal of part of the stearine content of palm oil, and changing the characteristics of palm oil so that it required lower temperatures to solidify it, was the subject of importation under the invoice description of palm oil oleine. The court held that such palm oil oleine, which is suitable for all of the purposes for which palm oil is used, and contains chemical elements within the range of palm oil, was classifiable under the *eo nomine* provision for "Oils, expressed or extracted: * * * palm" in paragraph 1732 of the Tariff Act of 1930.

In holding palm oil oleine classifiable as palm oil, the court cited among other appropriate authorities upon the subject, the case of *Bush* v. *United States*, 11 Ct. Cust. Appls. 246, T. D. 39076, involving hardened soya bean oil, which had been classified as a chemical compound because it had been chemically modified while heated and under pressure by the addition of two or more atoms of hydrogen induced by the presence of nickel. Through the presence of the nickel a part of the oleic acid component of the oil gained for each of its atoms two atoms of hydrogen and was converted into stearic acid, and as a result of the chemical change, a quantity of stearic acid was added, thereby causing the oil to harden at temperatures lower than would otherwise have been possible. The court found that the addition of hydrogen produced a chemical reaction fitting the oil especially for the manufacture of hard soap, a use for which the oil would not have been available in its liquid form. In spite of the change in the chemical composition of the soya bean oil and the added use thereof, the court held that it was still soya bean oil, and it was held classifiable under the *eo nomine* provision therefor. See also *Rockhill & Vietor* v. *United States*, Abstract 45788, 43 Treas. Dec. 657.

Following our decision in the *Balfour* case, *supra*, and the cases therein cited, we hold that the treated coal in question is properly entitled to free entry under the provisions of paragraph 1650 of the Tariff Act of 1930, as "Coal, * * * bituminous." Judgment will therefore be entered in favor of the plaintiff directing the collector to reliquidate the entry and make refund of all duties taken.